**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 5:26-MJ-5084-MAS** |
| | ) | **5:26-CR-00060-GFVT-EBA** |
| **MARION PINDER,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

The United States asks the Court to detain Marion Pinder and his codefendants pretrial following their arrest on conspiracy cocaine trafficking charges. This case presents the question of whether the United States has presented sufficient evidence that Pinder, who is alleged to be a large-scale drug trafficker with dated criminal history, poses a risk of nonappearance and/or danger to the community. The Court finds that the United States met its burden that Pinder poses a danger if released and will detain Pinder pretrial.

## I.  ANALYSIS

Pinder and his codefendants were charged in Criminal Complaints with conspiracy to distribute five kilograms or more a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 and of aiding and abetting the same in violation of 21 U.S.C. § 841(a).  [DE 1].  At the initial appearance, the

United States moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(B) and (C). The Court conducted a combined preliminary hearing and detention hearing on May 12, 2026, for all four defendants.[1]

## A.    LEGAL STANDARD

The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). At the end of the preliminary hearing, the Court found probable cause as to each defendant; thus, a rebuttable presumption of detention arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a nonappearance nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption

---

[1] The case has since been presented to the Grand Jury, who indicted all four defendants in case no. 5:26-CR-00060-GFVT-EBA.

remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Through proffer and the bond report, Pinder rebutted the presumption as to nonappearance and danger.  Pinder proffered the bond report, his ability to work for his father, and the demonstrated support of the many family members that appeared for the detention hearing.  Accordingly, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence.  *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006).  Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety.  18 U.S.C. § 3142(f).  The analyses are distinct.  Conditions that sufficiently target nonappearance risk may not adequately address danger potential.  *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001).  Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g., United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors drive the analysis.

**B.    PINDER'S DANGER TO THE COMMUNITY**

The § 3142(g) factors drive the analysis. The Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense charged, the weight of the evidence against the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

**1.    Pinder's History and Characteristics**

The Court must consider many aspects of Pinder's background in making the decision to release or detain her. The BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]" 18 U.S.C. § 3142(g)(3).

Pinder is a 35-year-old Central Kentucky native. Pinder lives in Lexington, Kentucky, with his partner and minor children, in a home he has resided in for the

past three years.  [Pretrial Services Report at 1-2].  If released, Pinder would return to that residence.

Pinder has never held formal employment, which favors detention.   [Pretrial Services Report at 2].  *See United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's long unemployment favors detention).  Pinder operates a dog breeding business out of his home and has performed odd jobs at his father's automobile dealership in the past.  [Pretrial Services Report at 2].  In support of his argument for release, Pinder proffered that he could work full time at his father's dealership as a salesman or detailing vehicles.  Pinder reported current daily use of cannabinoids and occasional use of other drugs in the past.  [Pretrial Services Report at 3].

Pinder has criminal history that began when he was a juvenile.  [Pretrial Services Report at 4-6].  In 2013, when Pender was 22 years old, he was convicted in Kentucky state court for first degree trafficking in a controlled substance (cocaine).  [Pretrial Services Report at 5].  He violated probation in that case and absconded supervision, ultimately resulting in his probation being revoked.  [Pretrial Services Report at 5].  In July 2017, only three weeks after his mandatory reentry supervision on the trafficking charge ended, Pinder was charged with (and ultimately convicted of) fourth degree assault.  [Pretrial Services Report at 6]. Six weeks after the assault charge, Pinder was charged with possession of a controlled substance (heroin) in the first degree, though that charge was later expunged.  [Pretrial Services Report at 6].  Pinder's criminal history is admittedly dated, as the most recent felony charge was

nine years ago.  Nonetheless, prior felony drug charges and convictions are of serious concern to the Court when considering whether a defendant poses a danger to the community if released.

Additionally, Pinder failed to appear in court in 2010, 2012, and 2019 in addition to absconding from supervision in 2015.  [Pretrial Services Report at 3-6]. Numerous failures to appear in the past imply that Pinder is unlikely to appear in court in this case as well; however, this is mitigated by the fact they are quite dated. *See United States v. Gibson*, 384 F. Supp. 3d 955, 964 (N.D. Ind. 2019) (finding that "multiple failures to appear" were aggravating) and *United States v. Gumora*, 2020 WL 1862361, at *7 (S.D.N.Y. Apr. 14, 2020) (finding that "numerous notations where warrants were issued for [ ] failure to appear" suggested flight risk).

### 2.      The Nature and Circumstances of the Offense Charged

The BRA requires Courts to consider the "nature and circumstances of the offense charged, including whether the offense is a crime of violence[.]"  18 U.S.C. § 3142(g)(1).  Congress has assigned a special category of presumed detention to narcotics trafficking crimes, reflecting the seriousness of those crimes' dangerousness to the community.

The facts underlying the charges were described in the Criminal Complaint and in the generally consistent testimony of United States witness, DEA Special Agent Leah Newell, as follows:

The DEA, FBI, HSI, and Kentucky State Police were conducting a joint investigation of Pinder and his alleged drug trafficking organization.  Law enforcement was conducting surveillance of Pinder at his residence on Winthrop

Drive on April 20, 2026, when a Dodge Ram registered in Louisiana to codefendant Santiago Rodriguez ("Santiago") arrived. The Ram had previously been tracked to Corpus Christi, Texas, where it had made several border crossings into Mexico. Santiago and his brother (and codefendant) Jesus Rodriguez ("Jesus") exited the Ram and went inside Pinder's garage. At one point, Jesus and Santiago unloaded a cooler from the truck bed and took it inside Pinder's garage. A short time later, codefendant Edgar Hernandez-Duron arrived and entered Pinder's garage. Law enforcement knew Hernandez-Duron as a prior target of DEA investigations. Pinder's garage door closed with all four men inside, and shortly thereafter, reopened.

Santiago and Jesus exited the area in the Ram. Law enforcement followed. Pinder loaded the cooler into a Jeep Compass. Pinder and Hernandez-Duron exited the area in the Compass. Santiago and Jesus were eventually tracked to a Hampton Inn where they had rented a room. Santiago and Jesus provided written consent for law enforcement to search their hotel room and the Ram. Law enforcement located approximately 30 kilograms of cocaine in the Ram.

Simultaneously, law enforcement followed Pinder and Hernandez-Duron to the Millpond Shopping Center. Law enforcement stopped the vehicle, at which point Pinder and Hernandez-Duron fled the area on foot—though Pinder and Hernandez-Duron suggested at the detention hearing that they either did not flee or fled but stopped of their own accords. Both men were quickly apprehended. Law enforcement approached the Jeep and viewed a kilogram of suspected cocaine in plain view in the vehicle. The packaging of the cocaine in the Jeep was consistent with the packaging

of the cocaine in the Ram.  The cooler contained only ice and shrimp.  At the detention hearing, the defendants maintained this transaction related to shrimp, not drugs.[2]

As a result of the above activities, law enforcement obtained and executed a search warrant for Pinder's Winthrop Drive residence.  During the search they recovered 16 kilograms of cocaine and a .45 caliber handgun with a round in the chamber. The total cocaine seized from the Ram, the Jeep, and the Winthrop Drive residence was 47 kilograms.  The wholesale street value of 47 kilograms of cocaine is approximately one million dollars.  *See United States v. Bucio*, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme").

### 3.    <u>The Weight of the Evidence of Dangerousness</u>

This BRA factor is somewhat duplicative of the first and third because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as Pinder's prior drug conviction and his violations of state probation.  "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt."  *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).

The heavy weight of Pinder's dangerousness is most evident in the large quantity of drugs found in Pinder's home and vehicle, the interactions law

---

[2] The United States did not adequately piece the import of the cooler and shrimp together.  As far as the Court can guess, and this is merely a guess, the United States implies that the cooler was used to transport kilograms of cocaine from Santiago's Ram into Pinder's garage, where, at some point, it was filled with shrimp and then placed in the Jeep.

enforcement observed on April 20, 2026, which imply he has ties to international drug supply, all coupled with the fact that he has previously been convicted of drug trafficking. "[G]iven the sheer quantity of narcotics Defendant has shown that he is capable of obtaining and distributing, Defendant poses a significant danger to the safety of the community[.]" *United States v. Bland*, 2020 WL 1904742, at *3 (D. Md. Apr. 16, 2020).

### 4.   <u>**The Nature and Seriousness of Danger Posed by Release**</u>

The Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As discussed above, the United States stressed Pinder's history of committing crimes using his current address and of failing to appear in court as directed.

Pinder has engaged in prior instances of criminality that posed a risk of danger to another person or the community including a history of possessing and selling narcotics. Pinder has a history of violence as well, including an assault conviction and disorderly conduct. Finally, Pinder has a history of failures to appear and ran from officers during the traffic stop on April 20, 2026.

Weighing all the totality of the evidence before it, the Court finds the quantity and type of narcotics alleged to have been trafficked out of Pinder's house and vehicle, plus a history of drug trafficking and disregard for court-imposed conditions poses a serious risk to the community. His history, though dated, of an assault conviction considered with a loaded firearm found in his residence with 16 kilograms of cocaine only increases the danger present.

### C.    NONAPPEARANCE RISK

As discussed above, Pinder has failed to appear in court on four prior instances, including one instance of absconding supervision.    The Court awards little significance to failures to appear in traffic court, but absconding supervision is of great concern when considering whether Pinder poses a risk of nonappearance on pretrial bond.  The absconding incident occurred more than a decade ago, wherefore the Court also discounts its significance.  Based on the minimal prior failures to appear listed in the bond report, the fact they occurred a long time ago, and Pinder's demonstrated family support, the Court finds the United States failed to meet its burden of preponderant evidence that Pinder is likely to fail to appear in court.

### D.    AVAILABILITY OF CONDITIONS

On balance, the Court finds that the BRA demands pretrial detention in this case.  Though Pinder proposed strict home confinement and location monitoring conditions, the Court has determined these are inadequate to protect the community from the nature and seriousness of the danger posed if Pinder is released.  The Court weighs heavily the fact that he was allegedly using his residence as a drug trafficking hub, a risk that is impossible for the Court to mitigate if he is released.  *See United States v. Nova*, 2016 WL 6471205, at \*2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home).

## II.    CONCLUSION

As discussed above, the United States did not demonstrate by a preponderance of the evidence that Pinder is unlikely to appear as required.  The Court finds that the United States proved by clear and convincing evidence that Pinder is an unmitigable danger to the community or others based on his criminal history and the charges herein.

Accordingly, **IT IS ORDERED** that the United States' oral motion for detention is **GRANTED** and directs that Pinder be detained pending resolution of the allegations against him.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 26th of May, 2026.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY